```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF MISSOURI
                        EASTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
     v.                         )    No. 4:09CR570 CEJ
                                )                 (FRB)
JAMES HARPER,                   )
                                )
            Defendant.          )
```

**MEMORANDUM,**
**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

Defendant's Motion To Suppress Evidence And Statements
(Docket No. 15)

Testimony and evidence was adduced on the defendant's motion at a hearing before the undersigned. A written transcript of the hearing has been filed with the court. (See Docket No. 29). From the testimony and evidence adduced at the hearing the undersigned makes the following findings of fact:

Findings of Fact

In the early morning hours of August 24, 2008, Deputy Eric Schlueter of the Warren County Missouri Sheriff's Department received a radio dispatch to investigate a possible occurrence of domestic violence at 12994 Roddau Court in Wright City, Missouri. Deputy Schlueter went to that location. Upon arriving he was met

by Debra Harper. Debra Harper reported to Deputy Schlueter that she had discovered what appeared to be child pornography on a compact disc (CD) and a computer in her home. Debra Harper played the CD for Deputy Schlueter displaying the images that had caused her concern. She also displayed for him on the computer a bookmarked "story" which described a sexual relationship between a child and an older man.

Deputy Schlueter noted that there were two separate computers in the residence, a Nemesis and an eMachine. Debra Harper told Deputy Schlueter that the Nemesis computer was used by her husband and that the eMachine was used by her. She stated that she also had access to and used both computers. Debra Harper also told Deputy Schlueter that she had seen child pornography on a laptop computer. She told offices that James Harper had taken the laptop computer out of town with him to Indiana where he had gone on business.

Debra Harper told Deputy Schlueter that her husband James Harper was out of town, that she had confronted him about the child pornography she had found and that her husband was currently en route from out of town to their home. Debra Harper said that she was concerned that James Harper intended to do her harm, which was the reason for her call to the sheriff's office.[1]

---

[1] Deputy Schlueter knew both James and Debra Harper. He knew James Harper because at one time in the past he had worked as a security guard at a plant where James Harper worked. He had also met Debra Harper during that period of time.

Deputy Schlueter told Debra Harper that he intended to seize the CD and computer as evidence and she agreed that he could do so. Debra Harper also signed a written "Permission To Search" form consenting to the seizure and removal from the home of the two computers and other items, and to a subsequent search of the computer and items. (See Government's Exhibit 1).

Later that morning James Harper arrived at the residence in Wright City. Deputy Schlueter told James Harper that he wished to speak with him. Deputy Schlueter then advised James Harper of the Miranda rights by reading from a card. Specifically, Deputy Schlueter told Harper that he had the right to remain silent; that anything he said could be used against him; that he had the right to an attorney and to have the attorney present during questioning; that if he wanted an attorney but could not afford one, one would be appointed before questioning. Deputy Schlueter then asked James Harper if he understood these rights and Harper said that he did. Harper then agreed to speak with Deputy Schlueter. (See Government's Exhibit 2 - Compact disc audio recording of interview with James Harper; Government's Exhibit 3 - Transcript of interview of Harper by Deputy Schlueter at residence).

Deputy Schlueter then transported James Harper to the Sheriff's Office. At the Sheriff's Officer Deputy Schlueter again advised James Harper of the same Miranda rights of which he had previously been advised. Harper again said that he understood

those rights and answered questions put to him by Deputy Schlueter. (See Government's Exhibit 2 - Compact disc audio recording of interview of James Harper; Government's Exhibit 6 - Transcript of interview of Harper by Deputy Schlueter at Sheriff's Office). During the interview Deputy Schlueter asked Harper if he wished to make a written statement about the matter under investigation. Harper said that he would make a written statement. Deputy Schlueter then presented Harper with a printed form. The form again set out the Miranda warnings; set out that the interviewee did not want to speak with or have a lawyer present; and set out that the statement was voluntary and not the result of any threats or promises. Deputy Schlueter read the form to Harper. He then also advised Harper of the Miranda rights from a printed form which he read to Harper. Harper signed the form acknowledging that he understood his rights; waived them; and agreed to answer questions. (See Government's Exhibit 4). Harper then handwrote and signed a statement. (See Government's Exhibit 5). (See also Government's Exhibit 6).

During the interview Harper told Deputy Schlueter that he sold the laptop computer and no longer had it in his possession.

Later that day Lt. Scott Schoenfeld of the Warren County Sheriff's Department interviewed James Harper at the Sheriff's Office. At the beginning of the interview Lt. Schoenfeld asked Harper if he had earlier been advised of his rights by Deputy Schlueter. Harper replied that he had been so advised, that he

remembered his rights, and that he did not need or wish to be readvised of those rights. Lt. Schoenfeld then questioned Harper about a number of things including specifically the whereabouts of the laptop computer. Harper reiterated that he had sold the laptop and no longer had it in his possession. Harper advised Lt. Schoenfeld that he had been staying with a person in Nappanee, Indiana, named Robert Baxter, but did not know the specific address. He also provided the name of a second individual, Terry Chanley, who was a part owner of the company by whom he was employed and who was also an officer with the Nappanee Police Department. Lt. Schoenfeld told Harper that he was going to contact the Nappanee Police Department in an effort to verify information provided by Harper. Lt. Schoenfeld questioned Harper concerning where he had been staying in Nappanee. The following conversation took place:

> Schoenfeld: Okay. Let me, uh let me get a hold of Terry. Let me, uh, when you, when you were staying at Robert, Robert's house out there, were you staying in his house. Do you have a room?
>
> Harper: Yeah. Yeah.
>
> Schoenfeld: Is it a room or did you stay up?
>
> Harper: No, I slept on the couch.
>
> Schoenfeld: Okay. Do you have any property over there at all? Clothes?
>
> Harper: I have my clothes and books, a couple books.

>     Schoenfeld:     Okay. Uh, is there anything over there that you have that you wouldn't mind somebody else looking through?
>
>     Harper:         If it was, I wouldn't leave it there.

Lt. Schoenfeld also inquired of Harper if he would consent to a search of the computers and CD seized earlier in the day from the residence on Roddau Court. Harper agreed and signed a "Permission To Search Form" so stating.[2] (See Government's Exhibit 7 - Permission To Search Form; Government's Exhibit 8 - Compact disc audio recording of Lt. Schoenfeld interview of James Harper; Government's Exhibit 9 - Transcript of Lt. Schoenfeld interview of James Harper).

Lt. Schoenfeld then contacted the Nappanee, Indiana, Police Department and spoke with Officer Jeremy Hooley. Lt. Schoenfeld explained the details of his investigation and why he was calling. Officer Hooley then went to the offices of Harper's employer, C&H Transport and spoke to the owners Jerry Hapner and Terry Chanley. He told them of the information related to him by Lt. Schoenfeld. Mr. Hapner told Hooley that Harper had stayed the previous evening in a Recreational Vehicle (RV) that was parked on the property of Mr. Hapner's residence. Mr. Hapner explained that he owned the RV but that he let several of his employees spend the night there while they were waiting for additional loads for

---

[2] During the interview Harper also told Lt. Schoenfeld that he had been employed as a police officer for a period of six years during the 1980's.

-6-

delivery. Mr. Hapner explained that he owned the RV and maintained free access to it at any time including periods when other people might be staying in the RV. Mr. Hapner then went to the RV and admitted Officer Hooley into the RV. Officer Hooley looked through the RV and in a bedroom area found a laptop computer with an external hard drive as well as a bag containing sexual objects. Mr. Hapner advised that the items did not belong to him and further requested that the items be removed from the RV. Officer Hooley then seized the laptop, external hard drive and bag of objects. Officer Hooley then contacted Lt. Schoenfeld and told him of the items that had been found. The items were later forwarded to the Warren County Sheriff's Department.

Upon learning from Officer Hooley that the laptop and hard drive had been found in Indiana Lt. Schoenfeld again interviewed Harper at the Warren County Sheriff's Office. He began by asking if Harper remembered his rights as informed earlier and Harper said that he did. Lt. Schoenfeld told Harper of what he had learned from Officer Hooley. Harper told Lt. Schoenfeld that he had told him earlier that he had sold the laptop because he didn't want the officers to find what was "on there", noting that it would include images of child pornography. Harper then signed a "Permission To Search Form" consenting to a search of the laptop and hard drive. (See Government's Exhibit 10 - Permission To Search Form; Government's Exhibit 11 - Compact disc audio recording

of Lt. Schoenfeld interview of James Harper; Government's Exhibit 12 - Transcript of interview of James Harper.)

On February 9, 2009, Lt. Schoenfeld applied for and obtained a warrant to search the two computers seized in August, 2008 at the Wright City residence as well as the laptop computer and hard drive seized from the RV in Nappanee, Indiana. The application for the search warrant was accompanied by the affidavit of Lt. Schoenfeld. In the affidavit Lt. Schoenfeld set out the circumstances of the seizure of the items sought to be searched. In the affidavit Lt. Schoenfeld noted that James Harper had admitted downloading child pornography on the Nemesis Computer, the laptop computer and the hard drive. The affidavit also set out that Lt. Schoenfeld had seen images of child pornography on a CD seized from the Harper residence. The affidavit also described Lt. Schoenfeld's training and experience in investigating child pornography cases, and that from such training and experience he knew that persons who viewed child pornography often kept and stored such images on computers. Based on the information in the affidavit a warrant to search the described items was issued by an Associate Circuit Court Judge at the Warren County Circuit Court. (See Government's Exhibit 13 - Application, Affidavit, Search Warrant and Return).

## Discussion

As grounds to suppress the evidence seized by the officers during their investigation the defendant first asserts that the search and seizure of items from his residence in Wright City, Missouri, was unlawful because made without a warrant and without his consent.

Law enforcement authorities may lawfully conduct a search without a warrant if they have the voluntary consent of a person having authority to consent to such search. Schneckloth v. Bustamonte, 412 U.S. 218 (1973); United States v. Bradley, 234 F.3d 363, 366 (8th Cir. 2000). The evidence shows that Debra Harper was residing at 12994 Roddau Court on August 24, 2008. As such she had authority to consent to a search of the residence. United States v. Matlock, 415 U.S. 164 (1974); United States v. Nichols, 574 F.3d 633, 636-37 (8th Cir. 2009).

When the officers arrived Debra Harper invited them into the residence. She told them why she had called the Sheriff's Office and of her concern for her safety. She also told them of her discovery of the images of child pornography on the CD, and displayed the images to them using a computer. She also showed them a bookmarked page on the computer which told a story of sexual contact between a child and an adult. She also told them she had seen child pornography on a laptop computer and hard drive which James Harper used and had in his possession.

Based on the information provided by Debra Harper Deputy Schlueter had probable cause to believe that the computers were instrumentalities of criminal conduct and contained evidence of such conduct and his seizure of the computers and CD were therefore lawful. Coolidge v. New Hampshire, 403 U.S. 443 (1971); United States v. Cruz-Mendez, 467 F.3d 1260, 1266 (10th Cir. 2006). Furthermore, Debra Harper consented in writing to the seizure and removal of the items from her residence, and to a subsequent search of the items.

The defendant contends that the search of the residence was nevertheless invalid because he was a co-resident of the home and police did not obtain his consent to search the residence. In support of this claim he cites Georgia v. Randolph, 547 U.S. 103 (2006). In that case the Supreme Court held that "a warrantless search of a shared dwelling for evidence <u>over the express refusal of consent by a physically present resident</u> cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." Id. at 120 (emphasis added). In the absence of such a refusal, consent to search by a co-occupant is valid. Id. at 121. Here, the defendant was not even present when Debra Harper consented to the search and could not therefore have objected. Nor is there any evidence that he ever voiced any objection to the search even after he arrived at the residence. The holding of Randolph is inapplicable here.

The defendant contends that the search of the RV in Nappanee, Indiana, was unlawful because he was a guest in the premises and therefore had a reasonable expectation of privacy in the premises, citing Minnesota v. Olson, 495 U.S. 91 (1990). In Olson the Supreme court held that an overnight guest in a home enjoyed a reasonable expectation of privacy in the home. In Olson police officers made a warrantless entry into a home to effect the arrest of Olson who was a guest in the home. Unlike the circumstances here, they did not have consent of anyone to enter the home. The evidence in this case shows that Jerry Hapner was the owner of the RV, and that it was parked on his property. Although he occasionally let his employees, including defendant Harper, stay in the RV while they awaited loads to transport, Mr. Hapner maintained full and complete access to the RV at all times, including periods where others were temporarily staying there. Officer Hooley obtained Mr. Hapner's consent to search the RV and the search was therefore lawful. Schneckloth v. Bustamonte, supra. Even if Mr. Hapner did not, in the circumstances, have actual authority to consent to the search, Officer Hooley could reasonably believe that Mr. Hapner had the apparent authority to consent to the search. Illinois v. Rodriquez, 497 U.S. 177 (1990).

The evidence shows that the subsequent forensic examination and search of the computers, laptop and hard drive were made with the express written voluntary consent of Debra Harper

(computers and CD seized from Wright City residence) and of James Harper (Nemesis computer, CD, laptop and hard drive).

Lt. Schoenfeld then went further and obtained a warrant to search each of the seized computers. In his motion the defendant asserts that he "contests the affidavit and search warrant for the contents of the computers, hard drive and compact disc because it lacks sufficient probable cause and, therefore, the execution of the search warrant was in violation of defendant's Fourth Amendment rights concerning unlawful search and seizure." Beyond this general assertion he makes no further argument. A review of the affidavit shows that it sets forth ample probable cause for the search, including James Harper's own admissions that he downloaded child pornography and that such images were stored on the various computers. Thus, this claim has no merit.

As grounds to suppress the statements made by him to law enforcement officials the defendant asserts in his motion that the statements "were the result of the illegal search and seizure and the failure to adequately advise him of his rights under Miranda." For the reasons described above the various searches and seizures made and conducted by the officers were lawful and the defendant's statements were not the result of any unlawful search or seizure. As to the defendant's claim that his statements should be suppressed because he was not adequately advised of his Miranda rights, the evidence does not support such a claim. On each occasion when the defendant was interviewed the officers began by

advising the defendant of his rights completely in compliance with the requirements of Miranda v. Arizona, 384 U.S. 436 (1966). The defendant acknowledged on each occasion that he understood those rights, was willing to waive them, and answer questions. Although Lt. Schoenfeld did not repeat the Miranda warnings to the defendant, he determined that the defendant had earlier been so advised and remembered them. The defendant's assertion that he was not properly advised of his rights is without merit.

## Conclusion

For all of the foregoing reasons the defendant's Motion To Suppress Evidence And Statements should be denied.

According,

**IT IS HEREBY RECOMMENDED** that defendant's Motion To Suppress Evidence And Statements (Docket No. 15) be denied.

The parties are advised that they have until **May 3, 2010,** in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

*Frederick R. Buckles*
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of April, 2010.